HAND and others *vs.* JACOBUS and wife.

A principal who has executed a contract for the sale of lands, and authorized an agent to receive an installment of purchase money under the contract, and given the purchaser to understand that the balance was to be paid to such agent, cannot repudiate the agency and refuse to execute the deed, because the agent, to whom the purchaser has paid the whole of the purchase money, is unable to pay it over to the principal.

On final hearing on pleadings and proofs.

*Mr. F. A. Demott*, for complainants.

THE CHANCELLOR.

This is a suit for specific performance. The case presents but a single question—whether Thomas Decker was the agent of the vendor to receive the purchase money. That there was a sale of the property, which was a house and lot in Pequannock township, in the county of Morris, by the owner, John Jacobus, to Hannah C. Hand, then the wife of the complainant, Albert Hand, but now deceased, is not disputed. Mrs. Hand died after the filing of the bill, and her children were made parties complainant in her stead. Nor is there any doubt that the price for which the property was sold, was, as stated in the bill, $500, nor that the terms of the purchase were, that of this sum, $200 were to be paid at the time of the purchase, which was March 2d, 1866, and the residue in sums following, and that on payment of $200 on account of the purchase money, the purchaser was to be let into possession. The evidence shows that Mrs. Hand, on payment of the $200, was let into possession accordingly, and expended a considerable amount of money in fencing the property. That the whole of the purchase money was paid, is not questioned, but the dispute is as to whether Thomas Decker, to whom it was paid, was authorized to receive it for the seller. The proof is, that when the first inquiry was made by Albert Hand, of Jacobus, as to whether he would sell the property, and if so, at what price, the latter told the person (Jonathan Andruss) who made the inquiry of him for Hand, that Decker was his agent, and transacted his business for him, and that to him any one desiring to purchase the property must be sent. Hand resided in Morris county, and Jacobus lived in Newark. Decker was a merchant in the latter place. The evidence shows that when the negotiations for the purchase were made by Hand, the aid of Decker was sought by Jacobus, and they were carried on by Decker, for and in the presence of Jacobus, at Decker's store, in Newark. On that occasion, Jacobus offered to sell the property on the terms above mentioned. Hand declined to close the purchase then, saying that he would think the matter over, and if he

got some money, would come down and see Jacobus; to which the latter replied, that he could come and see Decker about the property, that what Decker had done for him was all right, and that Decker would act as his (Jacobus') agent. Subsequently, on the 2d of March, 1866, Mrs. Hand came to Decker and told him they had concluded to take the property on the terms offered by Jacobus. She then paid him the first payment of $200, for which he gave her a receipt as agent for Jacobus. He then drew an agreement of sale of the property, on the terms offered by Jacobus, for Hand's acceptance, in the conversation at Decker's store. She signed it and left it with him, in order that he might get Jacobus' signature to it, which he subsequently did. Decker retained the document, but it afterwards came into Jacobus' possession, and was produced by his counsel on the examination. Decker testifies that a day or two after he received the $200, he informed Jacobus of what he had done, and he fully approved of it, and then promised to come into Decker's place of business and sign the agreement; that soon after, but not on the same day, he called on Decker, at his store, and Decker then read the agreement to him. He expressed his approval of it and signed it. On this latter occasion, Jacobus directed Decker to notify the tenant of the property to quit possession on the 1st of April then next, as he had sold the place to Mrs. Hand. This was done, and the tenant left the property in pursuance of the notification, and Mrs. Hand and her husband entered into possession, accordingly. Decker swears that at one of these interviews, he asked Jacobus if he wanted to use the $200, which he (Decker) had received from Mrs. Hand, to which Jacobus replied that he did; that he would like to use the money all at once; and thereupon he (Decker) told him to let him have the $200 until he (Jacobus) should receive the rest of the purchase money, and that he would pay him interest for it, to which Jacobus consented. On the 19th of June following, Mrs. Hand called on Decker, and paid him the balance of the purchase money—$300—which he received, and gave her a receipt for

it as agent of Jacobus, promising to get the deed for the property and send it to her.   The deed appears to have been subsequently drawn and executed, but Jacobus refused to deliver it until he received the whole of the purchase money, which Decker was then unable to pay him, but offered to pay him $200 or $300 of it in cash, and to give his check or note, payable within a few days from that time, for the residue. Jacobus declined to accept this arrangement of the matter. Jacobus, in his answer, which is wholly unsupported, denies that Decker was his agent, or that he ever held him out to be his agent in the sale of the property.   Opposed to his denial, however, is the testimony of Andruss and Decker, and that of Harris, who was present at the negotiation at Decker's store, and who testifies that in the conversation there, between the parties, Decker said that he was the one who did the business, and that therefore it would not be necessary for Jacobus to be present.   To the testimony of these witnesses, is to be added the circumstance, that after full knowledge of the fact that Decker had received the first payment from Mrs. Hand, and receipted for it, Jacobus not only made no objection to Decker's action in the matter, but distinctly approved of it, leaving the money in his hands as a loan on interest, and gave possession of the property to Mrs. Hand, in accordance with his agreement. And besides, he permitted the purchaser still further to act on the understanding that Decker was his agent, and on that understanding to pay the balance of the purchase money to Decker, and it appears that it was only when he found that Decker was unable to pay him the money which he had thus knowingly permitted him to receive as his agent, that he denied and repudiated his agency.   On the plainest principles, his answer cannot avail him.

The complainants are entitled to the specific performance of the agreement.   There will be a decree, accordingly.